## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| **BENJAMIN ENGLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-0133** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's Application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Judgment on the Pleadings filed on January 12, 2008 (Document No. 12.) and Defendant's Brief in Support of Judgment on the Pleadings filed on February 11, 2008 (Document No. 14.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Benjamin England (hereinafter referred to as "Claimant"), initially filed an Application for DIB benefits on July 15, 2002, alleging disability as of July 1, 2002, due to "center lumbar back problems – two herniated discs low back – nerves." (Tr. at 60 - 62, 76.) His claim was denied initially and upon reconsideration. (Tr. at 44 - 48, 50 - 51.) Claimant requested a hearing before an Administrative Law Judge [ALJ]. (Tr. at 52.) A hearing was held on November 20, 2003, before the Honorable John T. Yeary. (Tr. at 375 - 416.) By Decision dated January 30, 2004, ALJ Yeary determined that Claimant was not entitled to benefits. (Tr. at 18 - 28.)[1] ALJ Yeary's decision

---

[1] ALJ Yeary found that Claimant's degenerative disc disease, carpal tunnel syndrome and depressive disorder were severe impairments. (Tr. at 27, Finding No. 3.)

became the final decision of the Commissioner on September 17, 2004, when the Appeals Council denied Claimant's request for review (Tr. at 5 - 7.) Claimant sought judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) by filing a Complaint in this Court on November 8, 2004. England v. Barnhart, Civil Action No. 5:04-1196, in the United States District Court for the Southern District of West Virginia, Document No. 1. By Judgment Order filed on March 31, 2006, the Court denied Claimant's Motion for Judgment on the Pleadings, granted the Commissioner's Motion for Judgment on the Pleadings and affirmed the Commissioner's final decision. Id., Document No. 14.

It appears that Claimant filed a further Application for DIB benefits and an Application for SSI benefits in March, 2004, after ALJ Yeary's unfavorable decision and before the Appeals Council's denial of Claimant's request for review with respect to Claimant's July, 2002, Applications. (Tr. at 481 - 483, 860 - 863.) Claimant indicated that conditions respecting his "neck, middle back, lower back and carpal tunnel syndrome tendonitis" limited his ability to work. (Tr. at 494.) The claims were denied initially and upon reconsideration. (Tr. at 455 - 459, 462 - 464, 878 - 882, 884 - 886.) Claimant requested a hearing before an ALJ (Tr. at 46.), and a hearing was held on March 2, 2005, before the Honorable John Murdock. (Tr. at 887 - 902.) ALJ Murdock determined that Claimant should have a physical examination, and the hearing was closed. The hearing resumed and was concluded on January 13, 2006. (Tr. at 903 - 930.) By Decision dated April 28, 2006, ALJ Murdock determined that Claimant was not entitled to benefits. (Tr. at 424 - 441.) Claimant requested review of the ALJ's Decision, and the ALJ's decision became the final decision of the Commissioner on January 5, 2007, when the Appeals Council denied Claimant's request for review.

(Tr. at 417 - 419.) On March 5, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (1999). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 427.) Under the second inquiry, the ALJ found that Claimant's carpal tunnel syndrome and left ulnar neuropathy, discogenic and degenerative disease of the thoracic and lumbar spines and peripheral neuropathy of the lower extremities were severe impairments. ALJ Murdock found that Claimant's combination of depression and anxiety was non-severe and resulted in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation of extended duration.[2] ( Tr. at 427.) The ALJ rejected Dr. Ahmed D. Faheem's diagnosis of borderline intellectual functioning as "not well supported by medical evidence . . .." (Tr. at 428.) The ALJ further found that the medical evidence did not support a seizure disorder of establish fibromyalgia. (Tr. at 429.) At the third inquiry, the ALJ concluded that Claimant's medically determinable

---

[2] The Court notes that ALJ Yeary found that Claimant's depressive disorder was a severe impairment and as a consequence Claimant could perform work at the light level of exertion with limitations including "low stress work involving simple, repetitive tasks." (Tr. at 27, Finding Nos. 3 and 6.) Finding Claimant's depression/anxiety non-severe, ALJ Murdock states in his decision that he "substantially agrees with the assessment of the claimant's mental capacity in the prior administrative law judge decision. The psychiatric treatment record does not show any significant worsening in the claimant's mental status since the previously adjudicated period despite several changes in psychotropic medications." (Tr. at 428.) Though concluding that Claimant was mildly and moderately restricted in the three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) as a consequence of his non-severe mental impairment, Judge Murdock did not find that Claimant was limited in performing work activities as ALJ Yeary did. Respecting Claimant's concentration, persistence or pace, ALJ Murdock found that "he has the ability to maintain attention and concentration for at least a couple of hours at a time. Although the claimant may be moderately limited in this area of functioning, he retains the mental capacity to remember and carry out simple instructions and does not have a significant work-related limitation." (Tr. at 428.) ALJ Murdock's finding in this regard did not make its way into his recital of Claimant's RFC or his hypothetical questioning of Vocational Expert Vass.

impairments did not meet or medically equal the level of severity of any listing in Appendix 1, Subpart P, Regulation No. 4. (Tr. at 430.) The ALJ then stated that Claimant "has the residual functional capacity to perform light work except as follows: He can occasionally balance, stoop, kneel, or crouch, but he can never perform crawling or industrial climbing (that is, climbing of ladders, ropes, or scaffolds). He can perform fine manipulation no more than 30 minutes at a time. He must avoid extreme vibration and hazardous machinery and heights." (Tr. at 430 - 434.) The ALJ found that Claimant was unable to perform his past relevant work as a heating and air conditioning technician. (Tr. at 434.) Finding that Claimant was a "person closely approaching advanced age" with a high school education and no transferrable skills and considering his ability to perform light work with limitations, the ALJ determined based upon the testimony of a vocational expert that a significant number of jobs existed in the regional and national economies which Claimant could perform. (Tr. at 435 - 436.) Thus, the ALJ concluded, Claimant was not under a disability and did not qualify for benefits. (Tr. at 436.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). In Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005), the Fourth Circuit stated the standard which Courts must apply in reviewing social security decisions as follows quoting from its prior decision:

> "This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g) . . .." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "' Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Id., (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Id. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (Internal quotation marks omitted.)

Claimant's Background

Claimant was born on October 27, 1955, and was 50 years old at the time of the administrative hearing, January 13, 2006. (Tr. at 481, 924, 928) Claimant obtained a General Equivalency Diploma and completed training in heating, cooling and refrigeration. (Tr. at 500.) In the past, he worked as a heating and air conditioning servicer and installer. (Tr. at 495, 891.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that "[t]he ALJ erred when he did not give great weight to the claimant's testimony regarding his limitations and the opinions regarding the plaintiff's borderline intellectual functioning and residual functional capacity assessment of his treating psychiatrist, Ahmed D. Faheem, M.D., without a suitable and reasonable explanation as to why his opinions were not given greater weight." (Document No. 13, p. 2.) Claimant contends that his statements respecting his mental limitations were supported by the assessment of his treating psychiatrist, Dr. Faheem; yet, Claimant states that

> The administrative Law Judge disregarded testimony of the plaintiff without citing any persuasive contradictory evidence. * * * The Administrative Law Judge discounted any mental limitations, despite medical evidence in the regard of mental difficulties and the plaintiff's testimony. The Administrative Law Judge cited no objective medical evidence., only the opinions of an impartial vocational expert who testified at the hearing to support the assessment of mental and physical residual functional capacity.
> The Administrative Law Judge did opine that Doctor Faheem's conclusion that the plaintiff functioned in the borderline range of intelligence to be a 'non-medically determinable impairment." The Administrative Law Judge's reasoning is not supported by the medical evidence and is contrary to the conclusions reached by the plaintiff's treating psychiatrist. The fact that the claimant worked in skilled employment prior to becoming disabled and depression and decreased concentration existed at the time of testing all support the fact that the claimant had mental limitations during the period of his disability exactly as described by Doctor Faheem.

(Id., pp. 5 - 6.) Claimant points out that when "the limitations contained in the medical assessment form completed by Doctor Faheem were included, the vocational expert could identify no jobs suitable for the hypothetical claimant." (Id., pp. 5.)

The Commissioner asserts in view of the conclusion of proceedings upon Claimant's July, 2002, Applications for benefits that "the relevant time period before this Court began on January 31, 2004, one day after the prior ALJ's decision." (Document No. 14, p. 4.) The Commissioner then

summarizes the evidence pertaining to Claimant's mental impairments after January 31, 2004, in view of Claimant's assertions in this matter. The Commissioner asserts in response to Claimant's contentions that (1) the ALJ properly determined that Plaintiff's borderline intellectual functioning was not a severe impairment (Id., pp. 8 - 10.); (2) the ALJ properly gave little weight to Dr. Faheem's unduly restrictive opinion (Id., pp. 10 - 13.); and (3) the ALJ properly found that Plaintiff's subjective complaints of disabling mental symptoms were not credible (Id., pp. 13 - 14.).

DISCUSSION

Claimant is basically alleging error in the ALJ's decision respecting the severity and limitations which he experiences as a consequence of his borderline intellectual functioning and depression/anxiety at levels two, four and five of the sequential analysis. Additionally, Claimant contends that the ALJ erred in failing to explain why he found (1) that Claimant's borderline intellectual functioning was not severe, (2) that the assessment of Dr. Faheem respecting his limitations as a consequence of his mental problems should not be given great weight, (3) that his subjective statements should not be given great weight in view of Dr. Faheem's opinions and (4) that the opinion of the vocational expert in consideration of Dr. Faheem's assessment should not be adopted.

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); 20 C.F.R § 416.925(a) (2006). Borderline intellectual functioning meets the requirements of the Listings when the claimant produces evidence satisfying one of the four scenarios set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 as follows:

10

      A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

      B. A valid verbal, performance, or full scale IQ of 59 or less; OR

      C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function; OR

      D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
      1. Marked restriction of activities of daily living; or
      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration.

Additionally, the claimant must demonstrate significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.

Evaluation of opinions of medical sources begins at the second level of the sequential analysis and steps one through three of the "special technique" summarized above as the ALJ is considering whether a claimant has a severe mental impairment. The Regulations provide a framework for crediting the opinions of medical sources. The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). That Regulation provides further that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic

techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55(W.D.Va. 1996); see also, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.), reiterates the standard for considering medical opinions of treating sources stating when the ALJ must adopt the opinions of treating sources on the issue(s) of the nature and severity of claimants' impairments as follows:

> The [regulatory] provision recognizes the deference to which a treating source's medical opinion should be entitled. It does not permit us to substitute our own judgment for the opinion of a treating source on the issue(s) of the nature and severity of an impairment when the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

According to SSR 96-2p, the medical opinions of treating sources must be given controlling weight when they meet four factors: (1) they must be opinions of "treating sources"; (2) they must be "medical opinions", i.e., opinions about the nature and severity of claimants' impairments; (3) the ALJ must find them "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and (4) even if well-supported, the opinions must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p states further as follows:

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate

12

each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.

If the ALJ determines that a  treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 416.927(d)(2).

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. § 404.1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

At levels four and five of the sequential analysis and step five of the "special technique" summarized above, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity, i.e., what the claimant can still do. At level four of the sequential analysis, the ALJ considers the claimant's symptoms, including pain. A two-step process is used to determine whether a claimant's symptoms, including pain, are disabling.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2002); SSR 96-7p;

13

see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which they affect a claimant's ability to work must be evaluated.  Craig, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of symptoms/pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence."  Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). The credibility of a claimant's subjective report of his symptoms/pain may become a factor in determining his or her eligibility for social security benefits at level two of the sequential analysis in determining whether he or she suffers from one or more severe impairments, and it is an important factor at level four in determining his or her residual functional capacity in view of his or her symptoms and/or pain. A claimant's symptoms/pain are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2002).

"RFC represents the most that an individual can do despite his or her limitations or restrictions."  See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996).  Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2002). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your

14

impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). The Regulations specifically direct the ALJ to consider limitations related to both severe and non-severe impairments:

> When you have a severe impairment(s), but your symptoms, signs and laboratory findings do not meet or equal those of a listed impairment in Appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining you residual functional capacity.

20 C.F.R. § 404.1545(e). Thus, in determining a claimant's residual functional capacity, the ALJ must examine all relevant medical and other evidence and reach a conclusion respecting the most the claimant can do despite the combined effects of his severe and non-severe medically determinable impairments.

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's

15

"decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985).

In response to Claimant's claim that ALJ Murdock erred in failing to explain why he did not give great weight to opinions respecting his borderline intellectual functioning, the Commissioner asserts that "[t]he Court should dismiss Plaintiff's argument that his borderline intellectual functioning was severe on the basis of res judicata. * * * Since the prior ALJ's decision and this Court's decision, the current AJ noted that Plaintiff submitted no new evidence to suggest that the ALJ's prior determination was incorrect. Moreover, Plaintiff cites no new evidence to this Court to corroborate a diagnosis of borderline intellectual functioning. Plaintiff instead relies upon the June 2003 IQ test that was considered by the prior ALJ and this Court. Because Plaintiff has provided no new evidence of borderline intellectual functioning, the prior ALJ's determination and this Court's decision should be upheld on the basis of res judicata." (Document No. 14, pp. 8 - 9.)(Citations to case law and transcript and footnote omitted.) In response to Claimant's assertion that the ALJ erred in failing to explain why he did not give great weight to Dr. Faheem's residual functional capacity assessment, the Commissioner states that, like ALJ Yeary, ALJ Murdock determined that Dr. Faheem's assessment was inconsistent with his observations in treating Claimant and Claimant has not cited any objective medical evidence supporting Dr. Faheem's opinions. (Document No. 14, pp. 11 - 12.)

Addressing the Commissioner's assertion that the doctrine of *res judicata* applies to bar further consideration of evidence that Claimant has borderline intellectual functioning in view of Judge Yeary's decision, the Court finds that the law is not as preclusive as the Commissioner would

have it. The Fourth Circuit Court of Appeals stated as follows in <u>Albright v. Commissioner of Social Sec. Admin.</u>, 174 F.3d 473, 476 (4th Cir. 1999)(Footnotes omitted), respecting the application of *res judicata* in the context of social security proceedings:

> The SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability. At each decisionmaking level, the agency recognizes the traditional rule that, absent an identity of claims, principles of claim preclusion (historically res judicata) do not apply. Of course, to the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force.
>
> * * *
>
> The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition. As Judge Posner recently put it, 'Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.' <u>Groves v. Apfel</u>, 148 F.3d 809, 810 (7th Cir. 1998).

After the Fourth Circuit's decision in <u>Albright</u>, the Social Security Administration issued Acquiescence Ruling 00-1(4). In view of <u>Albright</u>, the Social Security Administration resolved as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant

17

does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in Lively. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in Albright. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

The record contains the June, 2003, Psychological Testing Results of Patsy J. Wilkerson, M.A. indicating that Claimant "is currently operating in the Borderline to Low Average Range of intellectual functioning . . .. The obtained test results may be an underestimate of intellectual and academic potential due to impaired concentration." (Tr. at 667.) Apparently in view of Ms. Wilkerson's findings, Dr. Faheem, Claimant's treating psychiatrist, concluded on July 1, 2003, that "[h]e is functioning in the borderline range of intelligence." (Tr. at 665.) This evidence was before ALJ Yeary in consideration of Claimant's July, 2002, Applications for benefits (Tr. at 20 - 21.), and the Court in England v. Barnhart, Civil Action No. 5:04-1196, and the Court referred to it in its March 31, 2006, Memorandum Opinion. Id., Document No. 13, pp. 7 - 8. ALJ Murdock mentioned the evidence that Claimant has borderline intellectual functioning in explaining why he concluded that Dr. Faheem's opinions contained in his February 7, 2005, Medical Assessment of Ability to Do Work-Related Activities (Mental)(Tr. at 725 - 727.) were not well supported.[3] ALJ Murdock stated that "Dr. Faheem based his assessment, in part, on a diagnosis of borderline

_____

[3] The Court notes that Dr. Faheem's February 7, 2005, Medical Assessment of Ability to Do Work-Related Activities (Mental)(Tr. at 725 - 727.) is the same as his October 29, 2003, Assessment (Tr. at 270 - 272.) except that Dr. Faheem found in his February, 2005, Assessment that Claimant went from poor to fair in his ability to deal with the public, poor to none in his ability to deal with work stresses and fair to poor in his ability to function independently.

intellectual functioning. The diagnosis was made during a psychological evaluation conducted at the psychiatrist's request during the previously adjudicated period. In the decision on the prior claims, Judge Yeary rejected the diagnosis for two reasons. (1) Borderline intellectual functioning is inconsistent with the claimant's skilled vocational history. (2) The claimant's performance on the intelligence and academic testing can be explained by depression and decreased concentration at the time. The current record presents no new evidence of subaverage intellectual functioning." (Tr. at 428.) ALJ Murdock then indicated, as ALJ Yeary did, how Dr. Faheem's opinions as set forth in his Medical Assessment of Ability to Do Work-Related Activities (Mental) are inconsistent with his treatment notes. ALJ Murdock stated that "[t]he severity of the limitations that Dr. Faheem assessed is not well supported by medical evidence regarding the claimant's mental disorders. Dr. Faheem opined that the claimant has 'poor' abilities to use judgment and to maintain attention and concentration and only 'fair' ability to understand, remember and carry out even simple job instructions. During treatment Dr. Faheem observed that judgment and memory were intact. The claimant reported that he was 'easily frustrated' and had difficulty concentrating, and Dr. Faheem concluded that the claimant, whom he originally thought had 'normal' attention and concentration, was 'impaired' in this area, but the psychiatrist did not describe to what extent. Dr. Faheem's clinical notes relate more about the claimant's physical pain than his psychological symptoms, and the psychiatrist's assessment is explicitly based on a consideration of 'chronic pain,' as distinguished from a pain disorder." (Tr. at 428 - 429.)

The Court finds that ALJ Murdock's consideration of evidence of Claimant's borderline intellectual functioning is fully in conformity with applicable law and regulations including the law respecting the application of *res judicata* in the context of social security proceedings and Judge

Murdock's decision in this regard is supported by substantial evidence. ALJ Murdock considered ALJ Yeary's January 30, 2004, findings and conclusions and found no further evidence in the record as it was developed after ALJ Yeary's decision that Claimant has borderline intellectual functioning. Indeed, there is no evidence in the record indicating that Claimant could possibly meet the Section 12.05C criteria or demonstrate significant deficits of adaptive functioning.

The Court finds ALJ Murdock's consideration of Dr. Faheem's February 7, 2005, assessment of Claimant's limitations comparing it with his treatment notes not fully in compliance with applicable law and Regulations or supported by substantial evidence. As ALJ Yeary had, ALJ Murdock found that Dr. Faheem's treatment notes did not reflect that Claimant was as limited by his mental problems as Dr. Faheem opined. While ALJ Murdock's conclusion appears generally to be correct, the Court finds his decision not in conformity with applicable law and Regulations and confusing in several respects. First, ALJ Murdock does not explain how he concluded that Claimant's anxiety/depression was non-severe when ALJ Yeary concluded that it was severe. Second, though ALJ Murdock concludes that Dr. Faheem's assessment "is not well supported for several reasons", he nevertheless finds that Claimant has mild and moderate limitations in the three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) based largely upon Claimant's report of his daily activities and relationships with others. (Tr. at 427 - 428.) Third, he concludes from Dr. Faheem's treatment notes that Dr. Faheem's assessment is based more upon Dr. Faheem's consideration of Claimant's physical pain than upon his psychological symptoms. Dr. Faheem's 2004 treatment notes indicate changes in Claimant's medications. In a July 9, 2004, treatment note, Dr. Faheem relates that "[t]he patient says that he is feeling some better. He feels that the medication combination is working for him. * * * He is alert,

well-oriented, cooperative."(Tr. at 728.) Dr. Faheem's September 3 and October 19, 2004, treatment note are not as positive. Dr. Faheem states in his September 3, 2004, treatment note that "[h]e is trying to cope. He is taking one day at a time. He is alert, well oriented, cooperative." (Id.) In Dr. Faheem's October 29, 2004, treatment note, his last treatment note in the record, Dr. Faheem states that "[h]e says that the cold weather affects him more. Patient has problems with mood fluctuations. He gets easily irritable and upset. He feels that he needs something to help with that. He quit coming for counseling. He says that he doesn't feel that counseling was doing much for him." (Tr. at 729.) The Court finds that Dr. Faheem's treatment notes tend to indicate that Claimant's depression/anxiety derives from his experience of physical pain. It appears that ALJ Murdock considered Claimant's physical pain distinct from his psychological symptoms and in doing so did not consider his impairments in combination. Rather, he fractionalized them. The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th

21

Cir. 1983.) ALJ Murdock's error is further evident in his failure to (1) include his findings that Claimant has mild and moderate limitations in the three areas of functioning (activities of daily living, social functioning; and concentration, persistence, or pace) and in regard to concentration "has the ability to maintain attention and concentration for at least a couple of hours at a time [and] he retains the mental capacity to remember and carry out simple instructions . . .." in his determination of Claimant's residual functional capacity and (2) incorporate these findings in his hypothetical question to Vocational Expert Vass.[4]

While questions posed to the vocational expert must fairly set out all of Claimant's credible impairments, the questions need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987.)  The Commissioner is not required to rely on the vocational expert's testimony in response to hypothetical limitations which were not supported by the record as a whole.  Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993.)  It is well established that the Commissioner is required to incorporate only those limitations which he finds to be credible.  Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993); Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1235 (6th Cir. 1993.)  A hypothetical question is sufficient if it sets forth the impairments which the Commissioner accepts as true.  Davis v. Shalala, 31 F.3d 753, 755. (8th Cir. 1994.)

ALJ Murdock posed a hypothetical question to Vocational Expert Vass which included no limitations on the basis of Claimant's non-severe mental impairment though in applying the "special technique", ALJ Murdock found mild and moderate limitations in the three functional areas

---

[4] Dr. Faheem found that Claimant's ability to understand, remember and carry out simple job instructions was "fair" which means "limited by satisfactory". (Tr. at 725 - 726.)

(activities of daily living, social functioning; and concentration, persistence, or pace). (Tr. at 924 - 925.) Claimant's attorney asked Mr. Vass to consider Dr. Faheem's assessment, and on doing so Mr. Vass stated that "[l]imitations as indicated in this document would not be compatible with any employment, there'd be no jobs." (Tr. at 927.)

As the ALJ was required to consider the limitations resulting from Claimant's severe and non-severe impairments in determining his RFC, he should also have related those limitations in posing his hypothetical to the vocational expert. The extent of the difficulties which Claimant was found to have in maintaining concentration, persistence or pace might have had a bearing upon whether jobs existed in the national and regional economy which he could perform. For this reason, the undersigned concludes that upon further consideration of the limitations which might be found to derive from Claimant's non-severe mental impairment in determining his RFC, the ALJ should submit his RFC findings once again to a vocational expert.

In consideration of the assertions of the Claimant and the Commissioner, and based upon a thorough examination of the evidence of record and careful reading of ALJ Murdock's decision in view of the applicable Rules, Regulations and case law, the Court finds that the Commissioner's decision that Claimant is not entitled to DIB or SSI is not in conformity with applicable legal standards and supported by substantial evidence of record. The Court cannot properly conclude that the error which it has found in ALJ Murdock's decision is harmless. On the other hand, the Court cannot conclude that when the error which it has found in ALJ Murdock's decision is rectified, it will lead to a different result than that which ALJ Murdock reached in his decision currently under review.  See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000)(finding that remand is unnecessary "if it will amount to no more than an empty exercise."); Fisher v. Bowen, 869 F.2d

1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") Under these circumstances, the Court will remand this matter for further proceedings in view of the Court's findings herein. By Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **DENIED**, the final decision of the Commissioner is **VACATED**, this matter is **REMANDED** for further consideration at levels, two, four and five of the sequential analysis of (1) the severity of Claimant's depression/anxiety, (2) the limitations in the three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) which Claimant experiences as consequence of his mental impairment and (3) the extent to which they may impact his ability to do work existing in the national and regional economies, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to counsel of record.

ENTER: March 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge